UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MATTHEW REID HINSON,

               Plaintiff,

v.                              Case No. 3:14-cv-1217-J-25MCR

R. A. BIAS, etc.; et al.,

               Defendants.

_____

### ORDER

#### I.  Status

Plaintiff, proceeding on a civil rights Complaint (Doc. 1),[1] asserts that his rights under the Fourth and Eighth Amendments were violated.  Complaint at 5.  He states police officers used excessive force against him on October 7, 2012, during an arrest. Id. at 5-6.  He alleges that Officers Bias, Kremler, Williams, and Anderson were involved in the arrest, however, Plaintiff is unsure of which officers were involved in the actual takedown and handcuffing procedure.  Id. at 6.  Plaintiff states that according to the arrest report, Officers Bias, Kremler, Williams, and Anderson took part in the arrest, and Defendant Schoonover was the lead supervisor at the scene of the arrest.[2]  Id.

_____

[1] With respect to the Complaint, the Court references the page numbers assigned by the electronic filing system.

[2] The Clerk of the Court shall correct Defendant Rob Schnoover's surname to Schoonover.

Plaintiff alleges that one of the officers took him out of his truck, slammed him to the ground, and placed handcuffs on him while he lay face-first on the ground.  Id.  Plaintiff further alleges that once he was handcuffed, officers assaulted him without provocation or just cause.  Id.  He contends that he was repeatedly beaten with flashlights and kicked, in violation of the Fourth Amendment.  Id. at 7.  He also states that some officers failed to intervene.  Id. at 5.  Plaintiff states that as a result of this alleged beating, he suffered multiple lacerations, bruises, and swelling on the side of his face and upper parts of his body.  Id. at 7.  He also states that he suffered injuries to his ear and now suffers from chronic migraines.  Id.  Plaintiff believes that he was knocked unconscious and does not remember the assault upon him.  Id.  He alleges that Defendant Schoonover, "the apparent supervisor at the scene," failed to take any action to stop the violation.  Id.

Plaintiff contends that all of the Defendants were deliberately indifferent to his medical needs as he was bleeding from the side of his face and needed medical attention.  Id.  Plaintiff states that he was deprived of any medical treatment despite his obvious need for medical care.  Id.  Plaintiff asserts that the Defendants' failures in this regard resulted in Plaintiff suffering further injury and physical and emotional pain.  Id.

Plaintiff seeks declaratory relief finding the Defendants violated his Fourth and Eighth Amendment rights when they used excessive force and failed to provide him with medical care.[4]  Id. at 9.  He also seeks compensatory and punitive damages against each Defendant.  Id.

This cause is before the Court on a Motion by Defendants, Anderson and Bias, for Final Summary Judgment (Doc. 41) and a Motion by Defendants Kremler, Williams, and Schoonover for Final Summary Judgment (Doc. 42).[5]  Jointly, Defendants filed a Notice of Filing Exhibits in Support of Their Respective Motions for Summary Judgment (Doc. 39), a Supplemental Notice of Filing Documents and Exhibits in Support of Their Respective Motions for Summary Judgment (Doc. 40), a Notice of Filing Corrected Exhibit [Docket

---

[4] Plaintiff raises two claims in his Statement of Claim:

> 1) United States Constitution Amendment Four-excessive use of force, deprivation of good name, police brutality, failure to intervene[;]
>
> 2) United States Constitution Amendment Eight-cruel and unusual punishment through deliberate indifference to medical needs after police brutality[.]

Complaint at 5.

[5] The Court advised Plaintiff of the provisions of Fed. R. Civ. P. 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond (Doc. 14).

- 3 -

No. 39-9] [Exhibit 9, Declaration of Janice G. Lowe, signed] (Doc. 50), and a Notice of Supplemental Authority (Doc. 52).[6]

On November 30, 2015, Plaintiff filed his Response to Defendants Anderson's and Bias' Motion for Summary Judgment (Doc. 54) and his Response to Defendants Kremler's, Williams', and Schoonover's Motion for Summary Judgment (Doc. 55). He also filed Plaintiff's Notice of Filing Exhibits in Support of his Respective Response to Defendants' Motions for Summary Judgment (Doc. 56).[7] In addition, Plaintiff submitted a Response to Defendants' Notice of Supplemental Authority (Doc. 62).

Defendants were granted leave to file a reply, and they filed a Reply to Plaintiff's Response to Defendants' Motion for Final Summary Judgment (Doc. 66). The Court also granted Plaintiff leave to file a traverse, and he filed his Traverse to Defendants' Reply (Doc. 68).

The Court has thoroughly reviewed all of the submitted exhibits and viewed the video footage provided to the Court by the parties.[5] Based on the record before the Court, the Court is not convinced that all of the Defendants have met their burden under

_____

[6] The Court hereinafter refers to Defendants' Exhibits as "Defendants' Exhibit."

[7] The Court hereinafter refers to Plaintiff's Exhibits as "Plaintiff's Exhibit."

[5] The Court also reviewed the video referenced by Plaintiff in his Response (Doc. 55) at 5. See http://www.news4jax.com/Hinson-Defense-looking-into-evidence/19277332.

- 4 -

the summary judgment standard on all of the claims raised in the Complaint.

## II.  Summary Judgment Standard

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  "If the moving party meets this burden, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'"  Ekokotu v. Federal Exp. Corp., 408 F. App'x 331, 333 (11th Cir.) (per curiam) (quoting Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007)), cert. denied, 132 S.Ct. 420 (2011).

## III.  Excessive Force

Plaintiff references the Fourth Amendment in his Complaint, and "[p]roperly analyzed, the basis for his § 1983 claim of excessive force comes under the rubric of the Fourth Amendment . . . ."  Jones v. Marcum, 197 F.Supp.2d 991, 998 (S.D. Ohio 2002).  The Court must employ the Fourth Amendment's "reasonableness" standard.  Id. (citation omitted).  Further, it must be recognized that some degree of force is constitutionally acceptable when a police officer is effecting an arrest.  Id. (citation omitted).

- 5 -

The Eleventh Circuit addressed the parameters of the excessive force inquiry in <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1333-34 (11th Cir. 2004):

> The Fourth Amendment encompasses the right to be free from the use of excessive force during an arrest. <u>See Vinyard v. Wilson</u>, 311 F.3d 1340, 1347 (11th Cir. 2002). As we have recently said, "[t]he 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1248 (11th Cir. 2004).
>
> In making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts.  We must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal. <u>See Graham v. Connor</u>, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); <u>Kesinger</u>, 381 F.3d at 1248-50; <u>Garrett v. Athens-Clarke County</u>, 378 F.3d 1274, 1279 (11th Cir. 2004).

The Eleventh Circuit described the relevant evaluation process for an excessive force claim:

> To balance the necessity of the use of force used against the arrestee's constitutional rights, a court must evaluate several factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396, 109 S.Ct. 1865; <u>see also Lee</u>, 284 F.3d at 1197-98 (citing <u>Leslie v. Ingram</u>, 786 F.2d 1533, 1536 (11th Cir. 1986) and stating that "in determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted") (footnote omitted). As this Court also recently explained in <u>Lee</u>, "Graham dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." 284 F.3d at 1198.

<u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1347 (11th Cir. 2002).

"It is also well-settled that the right to make an arrest 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" <u>Schultz v. Hall</u>, 365 F.Supp.2d 1218, 1225 (N.D. Fla. 2005) (citations omitted). The Eleventh Circuit, providing guidance in how to analyze these types of Fourth Amendment arrest cases, states: "[i]n analyzing whether excessive force was used, courts must look at the totality of the circumstances: not just a small slice of the acts that happened at the tail of the story." <u>Garrett v. Athens-Clarke County, Ga.</u>, 378 F.3d 1274, 1280 (11th Cir. 2004) (per curiam).

With regard to the question of the extent of the injury, in <u>Lloyd v. Tassell</u>, No. 07-11205, 2009 WL 179622, at *2 (11th Cir.

Jan. 27, 2009) (not selected for publication in the Federal Reporter), the Eleventh Circuit reiterated that the extent of the injury is not determinative, but the focus is rather on whether the force was objectively unreasonable:

> The extent of injury is not determinative, because reasonable force does not become excessive merely because it aggravates a pre-existing condition of which the officer was unaware. Lee, 284 F.3d at 1200. Conversely, objectively unreasonable force does not become reasonable or de minimis merely because the plaintiff only suffered minimal harm. Id. In addition, we have noted that force is more likely to be unlawful if it occurred after a suspect was already secured, the arrest effected, and danger vitiated, as opposed to force that occurred while the officer was still securing a suspect. Id. at 1199-1200.

Additionally, Plaintiff has made a claim that some of the Defendants failed to intervene, including the "apparent supervisor" at the scene, Defendant Schoonover. The Eleventh Circuit has recognized that there is an enforceable claim for failure to intervene:

> We have previously said that an officer can be liable for failing to intervene when another officer uses excessive force. See Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]"); see also Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985). This liability, however, only

> arises when the officer is in a position to
> intervene and fails to do so. See Ensley, 142
> F.3d at 1407 ("[F]or an officer to be liable
> for failing to stop police brutality, the
> officer must be in a position to
> intervene[.]").

Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924-25 (11th

Cir. 2000). See also Skrtich v. Thornton, 280 F.3d 1295, 1301

(11th Cir. 2002) (noting that an allegation that an officer was

present at the scene and failed to take reasonable steps to protect

a victim from another officer's use of excessive force states a

claim for relief) (citation and quotation omitted).

### IV. Medical Care

With regard to the claim that the officers failed to insure

that Plaintiff received medical care for his injuries, the law

under 42 U.S.C. § 1983 provides:

> A § 1983 claim is predicated on an
> alleged violation of an underlying
> constitutional right. In the case of a pre-
> trial detainee like [Plaintiff], "the Eighth
> Amendment prohibitions against cruel and
> unusual punishment do not apply." Belcher v.
> City of Foley, 30 F.3d 1390, 1396 (11th Cir.
> 1994) (quoting Tittle, 10 F.3d at 1539 n.3).
> Nevertheless, "in regard to providing pretrial
> detainees with such basic necessities as . . .
> medical care[,] the minimum standard allowed
> by the due process clause is the same as that
> allowed by the eighth amendment for convicted
> persons." Id. (quoting Hamm v. DeKalb County,
> 774 F.2d 1567, 1574 (11th Cir. 1985)). Thus,
> pretrial detainees like [Plaintiff] plainly
> have a Fourteenth Amendment due process right
> "to receive medical treatment for illness and
> injuries . . . ."

- 9 -

Cook ex rel. Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005).

The deprivation of medical care claim raised against these defendants is governed by the standards found in the Fourteenth Amendment since Plaintiff was a person arrested but not yet convicted.  In other words, as a pretrial detainee at the time of the incident, Plaintiff's claim of deprivation of medical care sounds properly in the Fourteenth Amendment right to due process of law rather than the Eighth Amendment.  The standards, however, are the same.

As such, Plaintiff must "shoulder three burdens," (1) he must satisfy the objective component by showing that he had a serious medical need; (2) he must satisfy the subjective component by showing that the official acted with deliberate indifference to his serious medical need; and (3) he must show that the injury was caused by the Defendant's wrongful conduct.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  See Harper v. Lawrence Co., Ala., 592 F.3d 1227, 1234 (11th Cir. 2010) (to show deliberate indifference, it requires a demonstration that the defendant had subjective knowledge of a risk of serious harm, that he disregarded that risk, that he acted with more than gross negligence, and that his conduct caused the injury) (citation omitted).  In short, Plaintiff must have had an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from

- 10 -

the facts presented.  Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001).

### V.  Conclusion

Based on the record before the Court, the following matters are in dispute:  (1) whether Plaintiff disobeyed the officers' orders or resisted arrest, including being handcuffed; (2) whether Plaintiff fully submitted to the officers commands and threw the knife out the truck window or dropped the knife as he exited the vehicle; (3) whether an officer threw Plaintiff to the ground after Plaintiff raised his hands and complied with the officers' commands, and whether officers proceeded to repeatedly strike Plaintiff after he was taken to the ground, then beat him (punched and kicked Plaintiff and struck Plaintiff with an instrument, perhaps a flashlight); (4) whether, after Plaintiff was handcuffed, an officer repeatedly struck Plaintiff on his back, and whether another officer struck Plaintiff with an instrument, possibly a flashlight; (5) whether officers standing by failed to act and stop the alleged beating and kicking by other officers; and, (6) whether the Defendants were deliberately indifferent to Plaintiff's alleged serious medical needs by denying and or delaying medical care.

The Court recognizes that the arrest clearly involved a serious crime and a potentially dangerous situation for the officers.  Making an arrest is a part of a officer's duties; however, the question remains whether the application of force was objectively unreasonable if Plaintiff can show he had already

- 11 -

submitted to the officers' commands, he did not resist and the actions of the officers caused Plaintiff to suffer injuries.[6]

The Court notes that the Fourth Amendment prohibits the beating of a restrained, non-resisting suspect. <u>Reese v. Herbert</u>, 527 F.3d 1253, 1274 (11th Cir. 2008). Plaintiff alleges that after he was handcuffed and lying on the ground, officers beat him, kicked him and struck him with flashlights.[7]

---

[6] Police were dispatched to Fioon MacCool's Irish Restaurant at 0029 (12:29 a.m.). Defendants' Exhibit 4, Arrest and Booking Report. As Plaintiff was attempting to leave the parking lot of the Jacksonville Landing in his truck, he was apprehended by police. Although Plaintiff was placed in a police interview room after his arrest, he was not interviewed until 5:25 a.m. Defendants' Motion (Doc. 41) at 11; Defendants' Exhibit 4, Childers' Declaration, at 2. When Plaintiff arrived at the Police Memorial Building to be interviewed by the police, he had visible injuries. Both the photographs and videos taken during the course of the police interviews depict abrasions/contusions on Plaintiff's forehead, face and legs. A trail of blood is visible on Plaintiff's leg and there is blood visible on his clothes and hands, although it is not entirely clear whether this blood was his or that of the victim. During an interview, Plaintiff told the detectives that he may have lost consciousness and he may have been drugged. During the course of the interview, Plaintiff said he thought he had been in an altercation with the victim. He also advised the officers that he could not remember much that transpired. The record further shows that after the use of force and after Plaintiff was lifted from the pavement, he fell or dropped to the ground and had to be lifted up by an officer. Finally, the record reflects that he was not seen by a certified medical assistant at the pretrial detention facility until sometime between 9:40 a.m. and 10:00 a.m. Defendants' Exhibit 12, Phillips' Declaration, at 1-2. He was cleared for admission to the pretrial detention facility by 10:10 a.m. Defendants' Exhibit 5 (Doc. 39-5 at 9). The certified medical assistant found Plaintiff had abrasions to his face that were minor and not bleeding at that time. <u>Id</u>. She recorded that Plaintiff appeared depressed, angry and anxious. <u>Id</u>. at 11.

[7] In his Complaint, Plaintiff admits that he does not remember the alleged beating, but relies on the videos of his arrest to

In the photographs and the videos filed with the Court, Plaintiff has visible contusions/abrasions to his forehead, face, and legs. During the police interviews, Plaintiff admits that he had been drinking, suggests that he may have been involuntarily drugged, and repeatedly touches his forehead and face and rubs his eyes.[8] He also mentions that he cannot remember a good portion of the events and he thought he had been attacked by the victim or others in the restaurant. Also, after being handcuffed and lifted up from the ground, Plaintiff fell or dropped to the ground.

As far as the arrest scenario, after Plaintiff lifted both hands up and exited the truck, the question remains as to whether Plaintiff posed an immediate threat to the safety of the officers or others and whether Plaintiff was actively resisting arrest. Material facts are disputed with respect to the excessive force claim, the failure to protect claim, and the medical claim. The evidence, including affidavits, pictures, videos, medical records,

---

support his claims.

[8] In Plaintiff's Exhibit C, the Response to Resistance Report (primarily written by Defendant Anderson), it states that Plaintiff's "Physical Force Body Impact Locations" are the head-face, head-forehead (left), and head-eye (left). (Doc. 56-3 at 3). The Report states that Plaintiff was injured; he was injured when there was officer contact; he was not treated by officers or a rescue unit, and he sustained visible injuries. Id. at 4. The injuries are described as abrasions. Id. Anderson describes the physical force type as "takedown techniques." Id. at 3. A straight arm bar takedown is mentioned, and the cause of the injuries is listed as the takedown. Id. at 4-5. No mention is made in the report of the use of pain compliance strikes by the two officers. Id. The conclusion in the report is the injuries were from the takedown. Id.

and Plaintiff's deposition create factual issues regarding the circumstances that led to Plaintiff's injuries, the extent of the injuries, and the need for prompt medical care to relieve pain or to treat the injuries.

The Supreme Court has cautioned that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). In Scott, the Supreme Court had the benefit of reviewing a videotape of the incident at issue, id. at 378-80, and as such, found that the Court of Appeals "should have viewed the facts in the light depicted by the videotape." Id. at 381; see Mathis v. Adams, No. 14-10605, 2014 WL 4067751, at *2 (11th Cir. Aug. 19, 2014) (per curiam) (citation omitted) ("In light of the uncontroverted video evidence, the district court was required to view the facts in the light depicted by the video even if [plaintiff's] allegations contradicted its depiction.")

Here, the parties have submitted videos that show much of the incident in question, and Plaintiff agrees that the video footage accurately reflects the arrest event, to the extent that it is included in the video, as it transpired. Accordingly, in ruling on summary judgment, the Court views the facts and all reasonable inferences in the light most favorable to Plaintiff except "to the extent [Plaintiff's] version of the facts is clearly contradicted

- 14 -

by the [video], such that no reasonable jury could believe it."
Beshers v. Harrison, 495 F.3d 1260, 1262 n.1 (11th Cir. 2007)
(alterations added); see Mathis, 2014 WL 4067751, at *2 (stating
"the district court could not credit [plaintiff's] allegation that
the defendants beat him for thirty minutes, as that allegation was
'blatantly contradicted by the record [(video)], so that no
reasonabl[e] jury could believe it[]'").

Therefore, the Court relies on the videos submitted by the
parties.  See Bodden v. Bodden, 510 F. App'x 850, 852 n.2 (11th
Cir. 2013) (per curiam) ("We need not adopt the non-moving party's
version of the facts to the extent it is clearly contradicted by a
videotape such that no reasonable jury could believe it."); Sims v.
Quilliams, 378 F. App'x 945, 946 (11th Cir. 2010) (per curiam)
("Because the district court relied on the facts as it observed
them in the tapes, it did not err by relying on these facts rather
than on [the plaintiff's] contradictory assertions."); White v.
Georgia, 380 F. App'x 796, 797 (11th Cir. 2010) (per curiam) ("It
is settled law that where the record tells two different stories,
one blatantly contradicted by the evidence, the court is not
required to adopt that version of the facts when ruling on summary
judgment.").

In this instance, Plaintiff's description of the use of force
is supported by the video evidence, which shows Plaintiff putting
both hands up, exiting the truck, being taken to the ground, and
two officers striking Plaintiff while two other officers are in

- 15 -

near proximity.  The video shows one officer employing at least five strikes, and a second officer employing at least one strike, and the video footage raises the question as to whether the strike by the second officer is done with an instrument or his hand.[9]

Defendant Bias, in his sworn Declaration, Defendants' Exhibit 3 at 2, attests that he saw a knife on the ground when Plaintiff got out of the vehicle.  He said he believed Plaintiff could still be armed and dangerous.  Id. at 3.  He noted that Defendant Anderson took Plaintiff to the ground to a prone position using a straight arm takedown.  Id.  Defendant Bias said he tried to quickly grab Plaintiff's hands, but Plaintiff had his hands underneath his body.  Id.  Fearing that Plaintiff may reach for another weapon, Defendant Bias said he struggled to get Plaintiff's hands free from underneath him.  Id.  Defendant Bias reported that Plaintiff refused to put his hands behind his back.  Id.  Bias attests that "in order to distract Hinson from resisting me, I gave Hinson five or six hammer strikes to his upper-mid back area as pain compliance."  Id.  He observed that Plaintiff sustained minor abrasions to the left side of his face (cheek, eye and forehead).  Id. at 5.

---

[9] The Sheriff's Office Response to Resistance policy states that "officers will not intentionally strike anyone with an intermediate weapon [described as batons and flashlights] on the head, neck, and clavicle unless the circumstance justifies the use of deadly force."  Defendants' Exhibit 2 at 9 (Doc. 39-2 at 18).

- 16 -

Defendant Kremler, in his sworn Declaration, Defendants'
Exhibit 8 at 2, identifies himself as one of the plain clothes
officers who approached Plaintiff's truck with his weapon drawn.
He states that after several commands Plaintiff put his hands up.
Id. at 3.  He saw Officers Bias and Williams arrive on the scene.
Id.  He observed Plaintiff being taken towards the ground, but then
disappear from his view.  Id.  Kremler noted that he ran around the
truck and saw Bias on the ground with the Plaintiff.  Id.  At this
point, Kremler attests that he turned off the ignition of the truck
and saw the knife on the ground.  Id.  He observed Officer Bias
struggling with Plaintiff and then use two or three strikes to
Plaintiff's back to get him to release his hands from under his
body.  Id.  Kremler states that he did not use force during the
apprehension of Plaintiff.  Id. at 3.  He did not observe any other
use of force other than the two or three strikes he saw applied by
Officer Bias.  Id.  He did see Plaintiff fall to the ground after
an officer stood him up.  Id.  He observed minor abrasions to the
left side of Plaintiff's face from "being on the pavement."  Id. at
4.

Defendant Officer Z. M. Anderson, in his sworn Declaration,
Defendants' Exhibit 2 at 1, arrived at the scene in an unmarked
covert vehicle wearing plain clothes.  He approached Plaintiff's
vehicle with his weapon drawn.  Id. at 2.  He observed blood on
Plaintiff's shirt, pants and right hand.  Id.  He stated that
Plaintiff did not immediately comply with Officer Kremler's

commands for Plaintiff to keep his hands where they could see them.
Id.  He notes that after several loud verbal commands, Plaintiff
put both hands up where they could be seen.  Id. at 3.  Anderson
describes the incident in great detail as follows:

> Officer R. A. Bias and S. T. Williams
> then arrived on scene to assist in
> apprehending the Plaintiff.  Officer Bias,
> Officer Williams, and I were standing by the
> driver's side of the Plaintiff's truck.
> Officer Kremler had moved to take his position
> by the passenger door of the truck.  Because
> the truck was between two concrete pillars and
> the toll booth, extracting the Plaintiff from
> the truck was very difficult.  Officer Bias
> told the Plaintiff to get out of the vehicle
> with his hands in the air.  The Plaintiff did
> not respond.  Officer Bias told him again to
> step out of the truck.  When Plaintiff did not
> respond, Officer Bias extracted him from the
> vehicle.  At that point, I saw a small black
> knife fall from his lap and land on the ground
> next to the truck. . . . Once out of the
> truck, Officer Bias told the Plaintiff to stop
> and turn around away from Officer Bias.
> Plaintiff did not stop and turn around as
> commanded but started to walk towards Officer
> Bias.  Officer Bias gave the Plaintiff the
> command again to stop and turn around.
> Plaintiff did not comply.  Because Officer
> Bias did not have his weapon drawn at this
> time, and being much smaller than the
> Plaintiff who stood well over 6 feet as
> compared to Officer Bias's short stature, I
> was concerned for Officer Bias's safety.
> Plaintiff was dangerously close (arm length)
> to Officer Bias in a confined space,
> especially when having been armed with a knife
> and could have been armed with other
> weapons. . . . I then grabbed Plaintiff's
> left wrist with my left hand and grabbed his
> left shoulder area with my right hand and
> performed a police technique called a
> "straight arm bar takedown."  I took the
> Plaintiff to the ground by the toll booth to
> apprehend him.

- 18 -

Once on the ground, Officer Bias attempted to handcuff the Plaintiff. Officer Bias repeatedly asked Plaintiff to release his hands. The Plaintiff had his hands underneath his body in a prone position and resisted being handcuffed by Officer Bias. Plaintiff struggled with Officer Bias's attempts to handcuff him. **I gave Plaintiff one compliance strike to his face, which caused Plaintiff to release his hands in order for Officer Bias to handcuff him.**

Once Plaintiff was handcuffed, I did not use any other force on him. I did not strike Plaintiff with a flashlight as he alleges in his complaint. I did not even have a flashlight with me that night. I did not kick or beat Plaintiff before or after he was handcuffed.

Id. at 3-4 (paragraph enumeration omitted and emphasis added).

Anderson further stated:

I used the pain compliance strike technique and the straight arm bar takedown technique because of the circumstances at the time. The Plaintiff had just stabbed another person, and he had a knife when he confronted him. I did not know if he had another weapon or weapons. Thus, I was concerned for officer safety (including mine). He was non-compliant with lawful commands. Consequently, it was vital to gain control of him and the situation rapidly and get him handcuffed before someone else got hurt.

I did not see any other officers use force on Plaintiff after he was handcuffed. I did not see any other officer kick or beat Plaintiff with or without a flashlight before or after he was handcuffed. I was not carrying a flashlight with me that night.

Plaintiff never complained to me of any pain or asked for medical assistance. After the Plaintiff was restrained, I observed that he had sustained minor abrasions to the left side of his face (cheek, eye and forehead)

- 19 -

from being taken to the ground.  I observed no
other injuries to the Plaintiff's person
related to this incident or otherwise.

At no time during my contact with the
Plaintiff, or during my observation of the
Plaintiff, did I perceive him as having any
injury that required medical attention.

Id. at 5-6 (paragraph enumeration omitted).

Detective Kevin D. Munger, one of the detectives that
interviewed Plaintiff, states in his sworn Declaration that he
observed minor abrasions to the left side of Plaintiff's face.
Defendants' Exhibit 10 at 2.  He also states that Plaintiff did not
request medical attention or appear to need medical attention.  Id.
Jacqulyne Phillips, the certified medical assistant at the pre-
trial detention facility, attests that Plaintiff has some minor
abrasions to his face, and most of the blood had dried.
Defendants' Exhibit 12 at 2.  She instructed Plaintiff to keep the
wounds clean with soap and water.  Id.  She reports that Plaintiff
did not complain of any pain, nor did he appear to be in any pain.
Id.

Valerie Rao, M.D., a non-treating physician who reviewed
Plaintiff's medical records, opines that Plaintiff suffered minor
abrasions to the left side of his face, and these abrasions were
superficial and non-life threatening.  Defendants' Exhibit 13 at 2.
She further opines that these abrasions likely occurred when
Plaintiff's face came into contact with the paved parking lot.  Id.
She also opines that the appearance of these abrasions is not

consistent with being punched, kicked, or beaten with a flashlight or knee strikes.[10]  Id.

Defendant Lieutenant Robert Schoonover, in his sworn Declaration, Defendants' Exhibit 14 at 2, states that he arrived at the Landing after Plaintiff was in police custody.  He further attests that he was not present at the Landing when Plaintiff was apprehended or handcuffed, and he did not play any role in apprehending Plaintiff and was not in a position to intervene during the arrest.  Id.  He states that he did observe minor abrasions on Plaintiff's face when he walked by the interview room and asked the sergeant about Plaintiff's facial injuries.  Id.  He states that the sergeant told him that Plaintiff had said that he was okay.  Id.  Finally, Schoonover relates that he gave a press conference the following day and said that there was no clear motive for the killing except that the victim had spoken to Plaintiff's wife at the bar and it was believed that Plaintiff may have been jealous and became enraged when he approached the victim. Id. at 3.

Defendant Williams, in his sworn Declaration, states that he was behind Officer Bias.  Defendants' Exhibit 15 at 2.  Williams explains that he heard Officer Bias direct Plaintiff to get out of

---

[10] Of significance, Defendant Anderson admits in his Declaration that he struck Plaintiff in the face with one compliance strike.  Dr. Rao's opinion, to the extent she is suggesting there was no strike to the face, is inconsistent with the facts as admitted.  The video evidence supports Plaintiff's allegation that he was struck as well.

the truck with his hands up and to turn away from him.   <u>Id</u>.
Williams states that Officer Bias opened the truck door, which was
close to the pay booth.   <u>Id</u>.   Williams then describes the use of
force:

> Once Hinson put one leg on the ground, I
> observed Officer Bias take his hand and pull
> Hinson out of the truck.   At this point, I
> heard Officer Bias tell Hinson to turn around,
> but Hinson did not obey.   I observed Officer
> Anderson grab Hinson and take him to the
> ground in a **prone position next to the
> booth**.[11]   I observed Officer Bias immediately
> try to get Hinson's hands from underneath him.
> Hinson was not cooperating.   I saw Officer
> Bias struggling to get Hinson's hands from
> underneath him, and then **give him [sic]
> several pain compliance strikes to Hinson's
> back**.

<u>Id</u>. (emphasis added).

Defendant Williams make no mention of Defendant's Anderson's
strike to Plaintiff's face.   In fact, Williams states that he did
not observe "Officer Anderson or Officer Kremler strike, punch or
beat Hinson before or after he was handcuffed."   <u>Id</u>.

Generally, Defendants contend the following:  Plaintiff had
just used a knife to slit the throat of a customer at the
restaurant and the customer was bleeding to death or was in
critical condition; Plaintiff was attempting to drive away from the
scene; when approached, Plaintiff, inside of his truck, was not
entirely responsive to police commands; a knife was found on the
ground next to Plaintiff's truck (and was either thrown out of the

---

[11] Prone means lying flat, face downward.

truck by Plaintiff or dropped to the ground when he exited the vehicle); one of the officers took Plaintiff to the ground claiming Plaintiff failed to follow commands upon exiting the vehicle; once on the ground, the officers assert that Plaintiff's hands were underneath his body, preventing the officers from observing his hands and handcuffing him; the officers claim they struck Plaintiff with their hands in order to get Plaintiff to release his hands from under his body; a second knife was found in the truck; the officers claim they did not strike Plaintiff with instruments or kick Plaintiff; they claim Plaintiff's injuries occurred when he came in contact with the paved parking lot during the process of restraint; they note that Plaintiff, after being returned to his feet, fell or dropped to the pavement, but did not strike his face on the ground during that fall; and Plaintiff never complained of any injuries and never requested medical attention.

The parties agree that a use of force did occur; however, Plaintiff contends that the use of force was not applied in a good-faith effort to arrest and secure him. The Court notes that Plaintiff was apparently not charged with resisting arrest. Although the use of force incident recorded on the videotape is brief, the Court is not convinced that the record shows "no more than a de minimis use of force," Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam). Indeed, the video shows Plaintiff being taken abruptly down to the ground after he put his hands up and exited the truck in an apparent attempt to

- 23 -

surrender.  Once on the ground, the video shows that one officer

uses his hand to strike Plaintiff five times.  During the course of

those strikes, the video shows a second officer strike Plaintiff

with perhaps an instrument in his hand (Plaintiff suggests a

flashlight was used to beat him) or perhaps, just his hand.[12]  Of

further import, due to camera angles; motion sensor cameras

starting and stopping; and a rather large sign in close proximity

to the take down, the entire incident is not fully captured on

videotape.

This type of force is not similar to a simple push or a shove.

Id. 525 F. App'x at 514 (stating that the type of force allegedly

used by defendant (twisting plaintiff's arm and pressing him

against the wall) was "not of a sort repugnant to the conscience of

mankind," but instead was similar to the push or shove described in

Wilkins,[13] which "almost certainly fails to state a valid

excessive force claim[]") (citations and quotations marks omitted).

Additionally, there is no evidence that efforts were made to temper

the effect of the use of force at the scene.  See Ledlow v. Givens,

500 F.App'x 910, 913 (11th Cir. 2012) (per curiam), cert. denied,

133 S.Ct. 2802 (2013); Fennell v. Gilstrap, 559 F.3d 1212, 1220

(11th Cir. 2009) (per curiam) ("The immediate offer of medical

---

[12] Of course, this would be a jury determination.  It is
difficult to discern whether it is just a hand striking the
Plaintiff or an instrument like a baton or flashlight in an
officer's hand striking the Plaintiff.

[13] Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

assistance demonstrates an effort to temper the severity of the response."). Of import, an offer of immediate medical care is the type of response that "makes it less likely that [officers were] acting sadistically instead of in good faith[,]" Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam), and in this instance, Defendants do not contend, and the submitted evidence does not show, that the officers at the scene made any efforts to mitigate the effects of the force that was applied.

In the Complaint, Plaintiff alleges several officers failed to intervene, including the supervisor, Defendant Schoonover. It is clear, "'[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.'" Dukes v. Miami-Dade Cnty., 232 F. App'x 907, 913 (11th Cir. 2007) (per curiam) (quoting Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998) (internal citation and quotation omitted)). However, "[t]his liability only applies when the defendant officer was **in a position to intervene**." Id. (emphasis added). Indeed, "[a] police officer with the ability to do so must intervene to stop another police officer's use of excessive force." Grimes v. Yoos, 298 F. App'x 916, 921 (11th Cir. 2008) (per curiam) (citing Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924-25 (11th Cir. 2000)). But, a civil rights plaintiff must include facts showing the "real opportunity" for the officers to intervene in the alleged unlawful conduct. See Keating

- 25 -

v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010) (citation omitted). Also, the plaintiff "has the burden to demonstrate that the defendant was in a position to intervene but failed to do so." Ledlow v. Givens, 500 F. App'x at 914.

Of importance, "[t]he Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....' U.S. Const. amend. IV." Walters v. Freeman, 572 F. App'x 723, 727 (11th Cir. July 16, 2014) (per curiam). In order to demonstrate a Fourth Amendment violation against Defendants Kremler, Williams, and Schoonover, Plaintiff must show that each one had a real opportunity to intervene, the ability to intervene, and was in a position to actually intervene, but failed to do so.

Defendant Schoonover asserts that Plaintiff has failed to establish that he was in a position to intervene. Based on the record before the Court, Defendant Schoonover was not present when Plaintiff was arrested and taken into custody. He arrived after Plaintiff was taken into custody, he did not have any contact with Plaintiff or the officers at the scene, and he did not hear or see any of the officers' actions constituting the alleged use of excessive force.

Based on Defendant Schoonover's Declaration, he has discharged his initial burden of showing that there are no genuine issues of material fact with respect to the failure to protect claim. Plaintiff is obligated to go beyond the pleadings to designate

- 26 -

specific facts showing that there remains a genuine issue for trial, and based on the record before the Court, Defendant Schoonover is not entitled to summary judgment on this claim. Simply, Plaintiff must show that the supervisor had the ability to intervene but failed to do so.

In the Complaint, Plaintiff says "Defendant Schnoover [sic] was the apparent supervisor at the scene and failed to act[.]"  In his Response to Schoonover's Motion for Summary Judgment (Doc. 55), Plaintiff does not attempt to challenge Schoonover's assertion that he was not at the scene and he had no opportunity or position to intervene.  Upon review, there is no evidence or support for the claim that Defendant Schoonover observed an excessive use of force or had the opportunity or position to be able to intervene to prevent abuse.  Schoonover did not arrive at the scene until after Plaintiff was in custody.  Therefore, Plaintiff has failed to meet his burden and Defendant Schoonover is entitled to summary judgment on this claim.

Although not a model of clarity, Plaintiff makes some mention of "deprivation of his good name" as part of his Fourth Amendment claim.  Complaint at 5.  Plaintiff is apparently making some attempt to allege that Defendant Schoonover, by reporting to media outlets concerning the status of the murder investigation and responding to questions from the media on behalf of the Jacksonville Sheriff's Office, made remarks which damaged Plaintiff's reputation.  This assertion does not constitute a

constitutional claim under the Fourth Amendment, or even the Fourteenth Amendment.[14]   Thus, Defendant Schoonover's Motion for Summary Judgment with respect to this claim for the alleged deprivation of Plaintiff's good name is due to be granted.

Plaintiff submitted a verified Complaint, and both parties submitted various documents and supporting evidence, including affidavits and/or declarations, videos, and records to support their respective positions.   Defendants Kremler and Williams' Motion for Summary Judgment will be denied with respect to Plaintiff claim of failure to intervene and protect him from the excessive use of force of the other officers.   The video footage supports Plaintiff's contention that Kremler and Williams were both in close proximity to the event, were fully aware of the takedown, and observed much, if not all of the arrest incident.   There remain genuine issues of material fact that prevent the entry of summary judgment on their behalf.

With regard to the issue of deprivation of medical care, "delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay

---

[14] A defamation claim, a state tort claim, does not give rise a constitutional due process claim under the Fourteenth Amendment, "unless there is an additional constitutional injury alleged." Rehberg v. Paulk, 611 F.3d 828, 851 (11th Cir. 2010) (citation omitted).    Here, Plaintiff has not alleged additional constitutional injury in this regard.   Injury to reputation is simply not enough to constitute a Fourteenth Amendment violation of deprivation of liberty or property interests.   Id. (citations omitted).

worsened the medical condition, and considering the reason for delay." <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1189 (11th Cir. 1994), <u>abrogated on other grounds by</u> <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002). "Delayed treatment for injuries that are of a lesser degree of immediacy than broken bones and bleeding cuts, but that are obvious serious medical needs, may also give rise to constitutional claims." <u>Harris v. Coweta County</u>, 21 F.3d 388, 394 (11th Cir. 1994).

Plaintiff did not see a certified medical assistant until approximately nine hours after he was injured. There is no reasonable explanation provided for this extraordinary delay in providing Plaintiff with some medical attention.[15] The medical assessment at the pretrial detention facility apparently included the taking of some oral history, making a visual assessment of Plaintiff's injuries, and taking Plaintiff's vital signs. It is not stated in the record whether Plaintiff removed his clothing for

---

[15] The Office of the Sheriff's Response to Resistance Policy submitted to the Court by Defendants states "[o]fficers and supervisors will be required to obtain medical evaluations Jacksonville Fire and Rescue Department (JFRD), nurse at the Pretrial Detention Facility (PDF), etc.) [sic] as soon as possible or practical, for individuals: 1. Who show signs of **any injury as a result of any use of force being applied**[.]" Defendants' Exhibit 2 at 2-3 (Doc. 39-2 at 11-12) (emphasis added). Additionally, it requires a medical evaluation if the individual becomes **"unconscious either during or following the application of any force**[.]" Defendants' Exhibit 2 at 3 (Doc. 39-2 at 12) (emphasis added). Plaintiff told the officers in the interview room he believed he was rendered unconscious, and he advised them he could not remember the officers taking him down and restraining him. Also of note, Plaintiff fell or dropped to the ground after the use of force.

the examination.   The Court also notes that a certified medical
assistant did the examination, not a nurse, physician's assistant,
or doctor.

A genuine issue of fact has been raised whether this delay
amounted to deliberate indifference to a serious medical need.
During the post-arrest interviews, Plaintiff told the officers he
could not remember much of the incident, and did not remember being
taken down by the police.   In fact, he stated that he thought he
may have been in an altercation in the restaurant.   He also told
the police he had been drinking and thought that he may have been
drugged.   He mentioned that he suffered previous black outs from
excessive intoxication in the distant past.   He also believed that
he had been rendered unconscious at some point.   In Plaintiff's
verified Complaint, he states he suffered injuries including some
lacerations and bruises and swelling on the side of his face and
upper parts of his body.[16]   He also relates that he suffered
injuries to his ear and developed chronic migraines as a result of
the beating.[15]   Id.

---

[16] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir.
2014) (per curiam) (citations omitted) ("The factual assertions
that [Plaintiff] made in his amended complaint should have been
given the same weight as an affidavit, because [Plaintiff] verified
his complaint with an unsworn written declaration, made under
penalty of perjury, and his complaint meets Rule 56's requirements
for affidavits and sworn declarations.").

[15] In his deposition, Plaintiff states that he was suffering
from pain in his face in the interview room.   Defendants' Exhibit
17 at 104.   The next day he said he had pain in his shoulder and
his body ached.   Id. at 104-105.   He did not recall asking for

Plaintiff had visible injuries after force was used during the arrest. No medical care was provided at the scene, even after Plaintiff fell to the ground after an officer stood him up. See Defendants' Exhibit 8, Kremler's Declaration, at 3. Defendant Schoonover admits in his Declaration that he saw Plaintiff in the interview room and inquired about Plaintiff's visible facial injuries. Instead of seeking medical attention for Plaintiff or requiring that he be immediately seen and examined, Schoonover simply asked the sergeant about the injuries, and the sergeant responded that Plaintiff had said he was okay. Defendants' Exhibit 14 at 2. Of course the officers in the interview room had been told that Plaintiff believed that he had been rendered unconscious and he could not remember anything after he put his hands up when he was first confronted by the police in his truck.

The Court recognizes that the arrest involved a very serious crime and a potentially dangerous situation for the police officers. The question remains whether the application of force was objectively unreasonable if Plaintiff can show he had already submitted to the officers' commands, he did not resist, and the actions of the Defendants caused Plaintiff to suffer injuries. In

---

medical attention in the interview room. Id. at 105. Plaintiff explained that it was obvious that he needed medical attention because "the side of my face was swollen and bleeding." Id. at 107. At one point in the interview room, Plaintiff's wife enters the room, has a conversation with her husband, and then says "[d]on't bleed on me." Defendants' Exhibit 19 at 30. Plaintiff's wife also dabs his face with a tissue or cloth, as displayed on the videotape.

this instance, the photographs and videos filed with the Court reflect that Plaintiff has visible contusions/abrasions to his face and scrapes on his legs. Plaintiff admitted that he had been drinking (approximately eight beers). He could not remember being taken down to the ground by the police or the details of his arrest. He told the officers he thought that he had been rendered unconscious during the arrest. Indeed, he fell to the ground after he was lifted up off of the ground by a police officer. His wife, when she visited him in the interview room, asked him not to bleed on her and dabbed his facial injuries.

The question remains as to whether Plaintiff posed an immediate threat to the safety of the officers or others and whether Plaintiff was actively resisting arrest. Material facts are disputed with respect to the excessive force claim (against Defendants Anderson and Bias), the failure to protect claim (against Defendants Kremler and Williams), and the deprivation of medical care claim (against Anderson, Bias, Kremler, Williams, and Schoonover). However, the Court concludes that Defendant Schoonover's Motion for Summary Judgment will be granted with respect to Plaintiff's Fourth Amendment failure to protect claim against him and the deprivation of good name claim against him, but it is denied with respect to the deprivation of medical care claim against him as there are disputed material facts.

## VI.  Qualified Immunity

The Defendants assert that they are entitled to qualified immunity from monetary damages in their individual capacities with regard to the excessive force, failure to protect, and deprivation of medical care claims.  Defendants' Motion (Doc. 41) at 22-25; Defendants' Motion (Doc. 42) at 15-19.  It is undisputed that the Defendants were engaged in discretionary functions during the events at issue.  Given the conclusion that summary judgment should be denied as to the Fourth Amendment claim against Defendants Anderson and Bias for the excessive use of force, as to the Fourth Amendment claim against Defendants Kremler and Williams for failure to protect, and as to the deliberate indifference claim against Defendants Anderson, Bias, Kremler, Williams, and Schoonover, and based on the state of the law on qualified immunity in the Eleventh Circuit, qualified immunity should be denied as to Defendants Anderson, Bias, Kremler, Williams, and Schoonover, except with respect to the Fourth Amendment claim of failure to protect against Defendant Schoonover.

To defeat qualified immunity with respect to Defendant Schoonover, Plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established.  Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam).  Since Defendant Schoonover was acting within the scope of his discretionary authority when the alleged failure to intervene occurred, the burden is on Plaintiff

- 33 -

to show that the Defendant is not entitled to qualified immunity. Skop v. City of Atlanta, 485 F.3d 1130, 1136-37 (11th Cir.), reh'g and reh'g en banc denied, 254 F. App'x 803 (11th Cir. 2007).  Here, a reasonable jury could not find that the Defendant Schoonover violated Plaintiff's Fourth Amendment rights by failing to intervene; therefore, Defendant Schoonover is entitled to qualified immunity.

Because Defendant Schoonover did not commit a Fourth Amendment violation, he is entitled to qualified immunity with respect to that claim.  See Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) (citing Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000)) (finding the plaintiff failed to present evidence from which a reasonable jury could find that the defendant could have stopped the use of force); Ensley v. Soper, 142 F.3d 1402, 1408 (11th Cir. 1998) (concluding that no reasonable juror could find that the defendant was in a position to intervene and finding "no evidence that might lead a reasonable juror to conclude that [the defendant] violated any clearly established right of [the plaintiff] to intervention.").  Plaintiff did not meet his burden to demonstrate that Schoonover had a real opportunity to intervene/protect and was in a position to intervene/protect, but failed to do so.  Thus, Defendant Schoonover is entitled to qualified immunity with respect to the Fourth Amendment claim of failure to protect.

Accordingly, it is now

- 34 -

**DONE AND ORDERED:**

1.     Defendant Schoonover's Motion for Final Summary Judgment (Doc. 42) is **GRANTED** with respect to Plaintiff's Fourth Amendment failure to protect claim and to Plaintiff's deprivation of good name claim and **DENIED** in all other respects.

2.     Defendants Kremler and Williams' Motion for Final Summary Judgment (Doc. 42) is **DENIED**.

3.     Defendants Anderson and Bias' Final Motion for Summary Judgment (Doc. 41) is **DENIED**.

4.     The Court finds that Plaintiff is entitled to the appointment of counsel.  Previously, the Court denied Plaintiff's motion for appointment of counsel without prejudice, noting that the Court would be willing to consider the request for counsel at a later date.  Order (Doc. 70).  This Court has broad discretion in determining whether the appointment of counsel is appropriate. Under these circumstances and at this point in the proceedings, the Court finds that Plaintiff is entitled to the assistance of a trained practitioner.  Plaintiff needs the assistance of counsel for a settlement conference and he needs assistance in preparing for a jury trial, if the case proceeds to trial, and in selecting a jury and presenting the case to a jury.  Therefore, **this case is referred to the Jacksonville Division Civil Pro Bono Appointment Program** so that the designated deputy clerk of the Court may seek counsel to represent Plaintiff.

5.    Since the search for an attorney for Plaintiff may be a lengthy process, this case is **STAYED** until counsel is appointed. Upon counsel's filing a Notice of Appearance, the stay will be lifted, and the case will be reopened.

6.    The **Clerk** shall administratively close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of May, 2016.


UNITED STATES DISTRICT JUDGE


sa 4/26
c:
Matthew Reid Hinson
Counsel of Record

- 36 -